The first case is 25-1515 Western, Missouri. Keith Carnes v. Amy McGowan. Mr. Honey? Good morning. Good morning. May it please the court. Eric Honey for Appellant Amy McGowan. This case involves whether or not Amy McGowan operated in her role as a prosecutor in charging of the plaintiff, Keith Carnes, in the 2003 shooting and murder of Larry White by acting in the role of an investigator by talking to a witness, Lorianne Morrow, prior to Morrow providing testimony to police or statement to police and whether or not Amy McGowan coerced Morrow into providing false testimony against the plaintiff, threatening to plant drugs on her, put her in jail, and to take away her kids. To support these claims, the plaintiff offers an alleged dispute of fact to overcome McGowan's immunity defenses asserted in her motion for summary judgment. These alleged facts are based solely on one witness, and the witness's 2024 deposition testimony, that of Lorianne Morrow. Counsel, isn't that enough under a couple of Supreme Court cases? A victim's statement to be a disputed material fact? A sworn affidavit? The Supreme Court's addressed that fairly directly. Your Honor, normally I would say yes. But like everything else in our law, there are exceptions to the rules, and here there are exceptions to this rule. Has the Supreme Court made an exception to that rule? Not with the specific affidavit. The Eighth Circuit has addressed affidavits in its decisions. And so here, the witness provides a statement to police in October of 2003, followed by two sworn testimonies at trial. All three consistent in her testimony, that Keith Carnes chased down the victim, shooting him, and then when the victim fell in a Fishtown parking lot, rolled him over and shot him point blank about five times. It isn't until nine years later, when an unexpected investigator shows up at the hospital where Ms. Morrow was at, that two affidavits followed. Both unexpected and sudden, and revisions of what Ms. Morrow's prior testimony at trial, two sworn testimonies were. So if we look at Garang, But isn't this really a credibility argument that you're making? Isn't that, I mean, obviously this is all things that could be the subject of cross-examination, and a fact finder may or may not believe Ms. Morrow, but at this point, isn't it really a credibility argument you're trying to make? It would be a credibility argument if not for that the Eighth Circuit has established that a fact is not a disputed fact, even if the district court says it is, if it blatantly contradicts the record. Usually has us looking at, you know, more concrete evidence. It has us looking at things like videos. It has us looking at things like photographs. I mean, he said, she said, is inherently a credibility dispute, and particularly in light of the fact that if you look at how, you know, what we instruct juries every single time, we say that a single witness is sufficient to find a fact, even in opposition to all other witnesses, after you've given credibility as you deem appropriate, right? And so you're asking us ultimately to make a credibility determination. I can't see it any other way. And I must be wrong, or you wouldn't be standing here. So can you explain to me why I'm wrong? Judge, the difference here, where the difference turns on the credibility, when the court is looking at this de facto, the Bedford and Liberty Mutual both tell us that the facts that are submitted to be believed as creating a disputed fact, they must rise above the metaphysical doubt and not create unreasonable inferences. And the 2024 deposition testimony that the plaintiff relies upon does just that. It would have you believe numerous accounts within the same testimony of different unknown times, inability to recall, not being able to remember, and even as the district court pointed out that when evaluating the defendant officer's statements said that they're unable to recall, so that doesn't create a disputed fact. That is exactly what we see consistently throughout that 2024 deposition testimony where Ms. Morrill can't recall, she can't remember, she believes this may or may not have happened. And it leads to an unreasonable inference when we look at that to establish a fact. Counsel, is there any federal law on destructive testimony or destructive evidence or self-destructive evidence? Some states have that. If a witness says five or six different things five or six different ways, it's called self-destructive or destructive evidence or destructive testimony. Missouri has a version of that. But federal courts don't have anything like that. Our jurisprudence doesn't have anything like that. Does it? I'm not aware of a destructive testimony in the Eighth Circuit that I would be able to cite to you here today, Judge. But I would say that when we look at the totality of those circumstances that we have here, the unreasonable inferences, the recalling, when we put all that together and look at really the fantastical nature of the claims that are made and set forth in that 2024 testimony, that it doesn't rise to the level to create a disputed fact. Well, the prosecutor admits that she was involved in a lot of investigation, right? Yes. And a lot of investigation for their charges, right? I'm sorry, Judge. A lot of investigation before there were charges, right? Not outside of her role as a prosecutor. Yeah, but before there were charges. Before charges were brought, isn't that one magic line for prosecutors? If it is outside the role of advocates. So a prosecutor might provide a search warrant prior to actually charging a case. That would not be in the role of an investigator. Right. My point is simply, doesn't the fact you're an investigator create kind of a presumption? You're not being a prosecutor before charges are filed? If it does create a presumption, Judge, I believe that it is overcome by what the nature of that action is. So obtaining a search warrant for an investigator, a detective, prior to the charge would overcome that presumption. Let me see if I'm following what you're saying. What you're arguing here is that Ms. McGowan was in some manner conducting an inquiry for the purposes of preparing an affidavit for the purposes of seeking a search warrant, which doesn't seem to be anywhere in the record that I looked at, as opposed to being a person who was conducting a series of inquiries in order to investigate the possibility of laying charges against an identified defendant. I mean, because one seems clearly investigatory to me, and the other seems to be more lawyerly, right? I mean, if somebody says, there's a contraband at X place, and here's what we know, and you go to talk to that witness, you prepare the affidavit, have the witness sign it, that's lawyer stuff. Lawyers have been doing that since the beginning of time. But for the most part, lawyers do not engage in going out and running down witnesses and making inquiry of them like Colombo prior to the filing of charges, right? And it seems to me that you're arguing that this case is more like preparing an affidavit as opposed to a pre-complaint investigation, and yet I didn't see that in the record, so what did I miss? So Judge, I think where the difference here is that Ms. McGowan is not saying that she spoke to this witness Morrow at all prior to police. That is the search warrant. Doesn't the prosecutor say at times she can't recall when she spoke to Ms. Morrow or if she spoke to Ms. Morrow? She didn't recall or didn't remember when that occurred because, again, she did charge several cases. Is that enough to create a material dispute of fact? According to Garang, it would not because a recall would not create a disputed fact, which is also what the district court uses to get away from the defendant officer statements that Ms. McGowan wasn't involved in the investigation. However, when we look at the record and read those, those officers, defendant officers were asked, do you recall this occurring? And they emphatically said no, which is a stark difference from asking a question to a witness such as Morrow here, and she's saying, I don't recall. One is asking if you recall. The officers emphatically said no because it didn't happen and is consistent with the record, whereas Morrow's statements are, I don't recall, maybe, yes, I don't know. So there's the difference in those. Further, I would just add that it was, it's quite honestly, it's fantastical to think that the statements made by Ms. Morrow in her 2024, if believed of all, could create a dispute of fact. She alleges that in that same week, when we look at it, the murder occurred on October 6th. The investigation was going on October 7th. That's when the weapon, the AK-47, was located. And then we have Wednesday and Thursday and Friday that Ms. Morrow would have us believe, depending on which account in that statement she provides, that Amy McGowan tracked her out in the street to tell her what to say and coerce her, or that she had officers, one time two officers, one time a deputy, bring her to the downtown courthouse for the coercer, or meeting her at the victim's witness' house to again coerce her and tell her what to say, all within the Wednesday, Thursday, Friday prior to the police detectives questioning her on Sunday, October 12th. And while it's not in the record, I doubt that Ms. McGowan's working on a Saturday as a prior prosecutor. I wouldn't have been working on a Saturday. So I submit that those are just fantastical. Claiming that the AK-47 was in the prosecutor's office the week of the murder with blown up pictures, those are not things you find in a prosecutor's office the week of trial, or the week of the murder. They're the things you find the week of trial. If there are no further questions, I'll save the rest of my time for the rebuttal. Thank you, Mr. Honey. Thank you, judges. Mr. Bowman? May it please the court. Prosecutor Amy McGowan has elected to frame this appeal as a contest about the legitimacy and the accuracy of the district court's findings of fact with respect to McGowan's prosecutorial immunity claim. That decision effectively eliminates this court's interlocutory jurisdiction. The United States Supreme Court in Johnson v. Jones made very clear that when a party seeking immunity comes before this court on an interlocutory basis, seeking review of that immunity claim, they may only do so if they present a neat, abstract question of law. Whether the district court has gotten it right or not in making the findings that that court has made with respect to the record and the evidence in the record is not a matter for this court's jurisdiction. In addition to Johnson v. Jones, there is a whole line of decisions of this court that make that point. Wilson v. Lawrence County, quote, we do not have appellate jurisdiction to review the district court's finding that evidence created a genuine issue of fact for trial. Taylor v. St. Louis Community College, White v. McKinley, Lockridge v. Board of Trustees of the University of Arkansas, and the list could go on. What happened below is that there are two starkly different accounts of the interactions between Morrow and McGowan. It sounds like there are more than two, counsel. Why do you say that, Judge? Well, because of the different statements by the witness. Well, what the district court found, and very clearly, is that Morrow's statements in the 20 years following her eyewitness account have differed and have been subject to inconsistencies, but that her message has stayed the same. Now, it looks like you're quoting. Are you quoting from the district court? I am. What page are you on? At page 38 of the opinion. And that is the fundamental issue. On Morrow's account, on that message that she has consistently delivered in the district court's words, what McGowan did was not prosecutorial in character. It involved McGowan interacting with Morrow before there were charges. Do you think the message is a finding of fact? I found the message sentence. Do you think that's a finding of fact, counsel? I think that that is the district court's evaluation of the evidence based on it. Well, my words are more careful than usual. Is it a finding of fact? I would say that it is an evaluation, an assessment of the totality of the evidence in the record. I think it's a finding of fact. It's not a finding with respect to a specific incident, but that assessment of the record, that evaluation of the facts, that, according to Johnson v. Jones and the cases that I mentioned a minute ago, that is beyond this court's jurisdiction. This court accepts that for purposes of the immunity analysis. I think that's a really interesting argument. I mean, it boils down, I think, if we look at this, is it a finding of fact? Is it a finding of an inference of fact based on the evaluation of the remaining facts, which we would still give credence to the court's determination of an inference that it draws reasonably from the facts? Well, I think I can accept the court's distinction and still carry the point because the issue is that the district court looked at the totality of Morrow's statement. She looked at Morrow's incriminating statements back in the day, the statement that she gave to the police. The district court looked at the 2021 deposition. It looked at the two sessions of deposition in 2024. It looked at affidavits that Morrow signed in 2014, and that was its assessment. Overall, the message of Morrow has stayed consistent, and that consistent message has been inconsistent with prosecutorial immunity in that what she has consistently conveyed, beginning in 2014, is that she wished to come forward in all candor and honesty and say that her testimony implicating Mr. Carnes had been false, that she had been carrying a burden for many years and wished to make things right, and that the impetus, the cause of her naming Carnes and desisting from her account that two other individuals were responsible for this murder was McGowan, that she talked to McGowan first before she ever talked to the police, and that McGowan pressured and coerced her, telling her that charges would be brought against her if she did not revise her story, that she could lose her children as a result of those charges, and as a result of the pressure, she changed her story. Now, that is... I know this isn't the thrust, maybe, of Mr. Honey's argument, but I'm curious, where do courts draw the line between prosecutorial function and investigative function? Let me set a little context, because prosecutors have a duty, an ethical duty, to have a good faith belief that a fact finder will convict. So it seems to me that talking to a witness can be a prosecutorial function. It can be, and there's no question about that. But, I mean, if you read the language of Buckley v. Fitzsimmons, and read the language of Pottawannamie County, McGee v. Pottawannamie County, what it clearly says is the type of interaction that Morrow describes doesn't fit as a prosecutorial function. When it occurs, as Morrow says, this interaction occurred prior to the development of probable cause. And to be clear, Judge Grunder, the only probable cause that ever existed against Keith Carnes were the statements of Morrow and the statements of Wendy Lockett. Morrow was interviewed by the police on October 12. Lockett was interviewed by the police on October 14. This was all in 2003. And the charges against Mr. Carnes followed on the 14th or on the 15th. So what Morrow says is that she spoke to McGowan before she talked to the police. And the reason she came to the police and was prepared to say that Carnes was the murderer was because of her prior interactions with McGowan, which had been coercive. And if you apply Buckley, and if you... Let me just clear up, just to make sure I understand this correctly. She's saying that she, Morrow, talked to McGowan before talking to any police? That, the district court says, is her consistent message. Now, to be clear, there is an exchange between Morrow and a prosecutor in the 2021 deposition in which Morrow does say the opposite. And the district court considered that. In fact, it quotes that exchange. Judge Katchemark quoted that exchange in her opinion and found, nonetheless, that, as we've been discussing, that the message was consistent to the contrary and that there was no basis to take this from the jury. Now, I don't know if I've answered the question, but there are... I do want to talk for just a minute about the Garang case, which was a focus of counsel's argument. Garang was what has sometimes been referred to as a sham affidavit case. The court uses the term sham. Yes. Indeed, the court did. And the point is that there had been a sudden and unexplained revision of testimony post-deposition by virtue of an affidavit drafted by counsel for a party that purported to set up an issue of fact where none existed before. It's not proper to suggest that the affidavits that Ms. Morrow signed in 2014 are of the same character as the affidavit that was an issue in Garang. For one, Ms. Morrow's 2014 affidavit is part of that consistent message that the district court found in that she says in 2014 that she came to the police implicating Karnes because McGowan had coerced and threatened her prior to that police interaction. But even if there were inconsistencies between the 2014 affidavits and the subsequent testimony, this is not a matter that did not develop with the opportunity for cross-examination and the participation of opposing counsel in the assessment of the witness. Ms. Morrow will be cross-examined at trial, and her credibility will be tested. So be it. There was a question, Judge Benton, about video, an allusion, I think, to the Scott v. Harris case. This is not a Scott v. Harris scenario, to be very clear. Ms. McGowan professes to have no recollection of Morrow, no recollection of this case. She puts forward her habit and practice as the rebuttal to Morrow's assertions about her. But in her deposition, she does make clear that she would, as a matter of course, receive from time to time information about an ongoing police investigation by virtue of a pager. She says in her deposition that she might have occasion in the course of an investigation, particularly of a homicide, to come to the scene, and so forth. So Ms. McGowan, in short, does not stand in the posture of a video as an unassailable, unimpeachable source of contrary information. Instead, she is herself an impeachable witness, impeachable in the ways I've suggested, and impeachable with her history, which is extensive, of misconduct, including multiple instances of judicially found dishonesty by virtue of the concealment of evidence. There will be a credibility contest at trial, as the district court envisioned, and that's where we should leave this issue. I do want to speak briefly to the issue of qualified immunity in my remaining minute. The briefing takes care of issues with respect to waiver and development of the argument, but should the court have any question about qualified immunity, the reality is that if you accept Morrow's description of her interactions with McGowan, then what McGowan has done, by not revealing those interactions, is to conceal a contrary, impeaching, inconsistent statement of a key witness at a coming criminal proceeding. That is textbook giglio. That is a Brady violation starting back in the 1960s. That type of misconduct was clearly established to violate the Constitution, going back many decades before the events in this case. The district court considered all of this thoroughly. We ask that you affirm. Thank you. Thank you, Mr. Bowman. Mr. Honey, your rebuttal. Thank you, Your Honor. I just want to address a couple of points that counsel brought up. First and foremost, there is zero facts in the record that Ms. McGowan participated in any investigation prior to the charging. In the Brady violation in this, the reason why the conviction was overturned has to do with the police officer's failure to turn over a report, not only to the defense counsel, but to the prosecutor, to Amy McGowan herself. So the Brady violation, which the conviction being overturned, has nothing to do with Ms. McGowan. Now, if you look at that 2021 statement, even in there, Morrow says that the conversations with Ms. McGowan happened after her interview with police. And looking at those affidavits, we're taking those out of the way. And even in consistencies there, we have consistent, consistent, consistent on the facts that occurred that were testified at trial by Ms. Morrow. And I think what is even more so to drive that point home... Excuse me, doesn't Morrow say that the discussion occurred before the police got involved? She does in the affidavits. That's the first time that that comes up. And then in the 2021, she says that they happened after the police. In the 2024, it's kind of all over the place. The district court... Go ahead. Well, I think Mr. Bowman's argument about the Brady-Giglio violation was that the statement to McGowan was never disclosed. If we were to believe that this is a disputed fact, then that would be the case. However, I believe with our argument is that the 2024 deposition doesn't create a disputed fact, as the plaintiff asserts, and therefore it should not be considered as a disputed fact, which would support summary judgment in favor of Ms. McGowan. If Ms. McGowan told Morrow what to say at trial to implicate and get a conviction over Keith Carnes, why would she tell her to say that Keith Carnes rolled over the victim and shot him in the face at point blank when the physical evidence clearly would not support that? It's just illogical. Here, Ms. McGowan has asserted her immunity defenses on each of these claims, and when we take this testimony of Ms. Morrow out of the equation, because it does not rise to a disputed fact, summary judgment favors Ms. McGowan. Ms. McGowan asked that this court would reverse the district court's order and remand for an entry of summary judgment in her favor, or alternatively, to vacate the district court order and remand for reconsideration. Thank you. Thank you, Mr. Honey. The court appreciates both counsel's appearance and argument. The case is submitted, and we will issue an opinion in due course. You may be excused.